UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARIA MATARAZZO,<br><br>                Plaintiff(s),<br><br>     v.<br><br>GEICO CASUALTY COMPANY,<br><br>                Defendant(s). | Case No. 2:19-CV-529 JCM (VCF)<br><br>ORDER |

Presently before the court is defendant GEICO Casualty Company's ("GEICO") motion for partial summary judgment. (ECF No. 12). Plaintiff Maria Matarazzo ("plaintiff") filed a response (ECF No. 15), to which GEICO replied (ECF No. 16).

**I.    Facts**

This is an insurance dispute arising from an accident that occurred in a parking lot near the intersection of Tropicana Avenue and Pecos Road and resulted in injury to plaintiff.

On April 3, 2017, plaintiff was driving a 2005 BMW X3 and was stuck by Albelardo Castro ("Castro") with his 2004 Dodge Ram. (ECF No. 6).

At the time of the accident, Castro had a policy was Geico General Insurance Company ("Geico General"). (ECF No. 6). The BMW was insured by GEICO to policyholder Jean Claude Matarazzo (the "insured"), policy no. 4315-35-92-83, effective January 17, 2017, through July 17, 2017, which identified the 2005 BMW X3 as a covered vehicle (the "policy"). (ECF No. 12-1). The policy included $100,000.00/$300,000.00 of underinsured/uninsured motorist ("UM/UIM") coverage. (ECF No. 12-1).

After receiving $15,000.00 from the negligent party's insurance carrier, plaintiff sought additional compensation from GEICO under the UIM policy. (ECF No. 6).

**James C. Mahan**
**U.S. District Judge**

On May 3, 2017, attorney Mark Saggese ("Saggese") sent GEICO a letter, stating that he represented plaintiff and seeking written verification of coverage as to all types of coverage maintained. (ECF No. 12-6).

On May 8, 2017, GEICO responded, listing applicable coverage and requesting copies of all medical documentation and lost wage verification currently available, as well as a request that plaintiff sign and return the enclosed authorization for medical and wage information. (ECF No. 12-7).

On August 2, 2017, GEICO sent Saggese a letter, notifying that plaintiff's claim was being closed due to inactivity and requesting additional information that would indicate there would be an UIM claim be forwarded to its office for review. (ECF No. 12-8).

On October 23, 2018, Saggese sent GEICO a demand for settlement for the first party policy limit of $100,000.00 under the UIM policy coverage, attaching plaintiff's medical bills listed in the total amount of $33,862.24. (ECF No. 12-9).

On October 26, 2018, and again on October 29, 2018, GEICO sent Saggese a letter requesting completion of the "Statement of Claim under Uninsured Motorist Coverage" by plaintiff and the "Medical Report" by plaintiff's doctor. (ECF Nos. 12-10, 12-11).

After receiving no response, on November 8, 2018, GEICO sent Saggese a letter, noting the $15,000.00 in underlying carrier coverage, the $33,862.24 in medical bills included, adding an additional $7,500.00 for general compensation, and offering settlement in the amount of $26,362.24 as full and final settlement of the matter. (ECF No. 12-12).

In response, on November 9, 2018, Saggese sent another demand for the full $100,000.00 policy limit, listing additional costs of future medical treatment between $20,025.00 and $28,025.00. (ECF No. 12-13).

On November 13, 2018, GEICO sent Saggese a letter requesting to obtain a detailed recorded statement by plaintiff regarding her injuries and their relationship to the different incidents she was involved in via an "Examination under Oath" ("EUO"), as well as the last five years of her medical records. (ECF No. 12-14).

On November 29, 2018, Saggese sent GEICO a letter requesting a definitive explanation as to why GEICO was refusing to tender policy limits. (ECF No. 12-15). On December 4, 2018, GEICO responded, repeating its request for an "Independent Medical Examination" ("IME") and confirming Saggese would not permit a recorded statement. (ECF No. 12-17).

On December 13, 2018, Saggese sent GEICO a letter again requesting a definitive explanation as to why GEICO was refusing to tender policy limits. (ECF No. 12-18). On December 18, 2018, GEICO responded repeating its request for an IME and EUO. (ECF No. 12-19).

On January 3, 2019, and again on January 15, 2019, GEICO sent Saggese requests for an IME and EUO. (ECF Nos. 12-12; 12-21).

On February 7, 2019, the IME was conducted, followed by the EUO on February 25, 2019, and the issuance of the IME report, dated March 5, 2019. (ECF Nos. 12-22; 12-23; 12-24).

On March 7, 2018, GEICO sent Saggese a letter determining that the full value evaluation of the claim to be $63,323.58, which based on the information provided included $27,798.58 of plaintiff's $37,047.28 in medical bills, $28,025.00 in loss of earnings, and an additional $7,501.42 for general compensation. (ECF No. 12-25). Factoring in the $15,000 of underlying carrier coverage, GEICO thus made a settlement offer in the amount of $48,325.00. (ECF No. 12-25).

On March 12, 2018, GEICO sent Saggese a letter requesting he discuss its revised settlement offer of $49,500.00 with plaintiff. (ECF No. 12-26).

On March 28, 2019, Plaintiff filed her original complaint against Geico General (ECF No. 1), which was subsequently amended on May 21, 2019 (ECF No. 6). Plaintiff's first amended complaint ("FAC") against GEICO alleges four claims for relief: (1) bad faith – violation of Unfair Claims Practices Act; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) breach of fiduciary duty. (ECF No. 6).

In the instant motion, GEICO moves for summary judgment with respect to claims (1), (3), and (4) of plaintiff's FAC. (ECF No. 12). The court will address each in turn.

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

**A. Claim (1) – Bad Faith Violation of Unfair Insurance Practices Act, NRS 686A.310 *et seq.* ("UIPA")**

Plaintiff alleges that GEICO breached subsections (b), (e), and (n) of NRS 686A.310. (ECF No. 6 at 5).

The Nevada Unfair Claims Practices Act, NRS § 686A.310, deals with unfair practices in settling claims and liability, if any, of the insurer for damages. This statute designates certain insurance company activities as unfair practices and allows for a private right of action by an insured against the insurer for a violation of the statute. *See Hart v. Prudential Prop. & Cas. Ins. Co.,* 848 F. Supp. 900, 903 (D. Nev. 1994). "The provisions of NRS 686A.310 address the manner in which an insurer handles an insured's claim [even if] the claim is denied." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010).=

Subsection (1) of NRS 686A.310 sets forth various activities considered to be an unfair practice. Nev. Rev. Stat. § 686A.310(1). Specifically, insurers violate UIPA by:

. . . .

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

. . . .

(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

. . . .

(n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

. . . .

Nev. Rev. Stat. § 686A.310(1)(b), (e), (n). Subsection (2) of NRS 686A.310, in turn, provides that "an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice." Nev. Rev. Stat. § 686A.310(2).

In the instant motion, GEICO argues that "[t]here are no gaps in GEICO's responses to Plaintiff's communications that would lead reasonable jurors to find that GEICO failed to timely respond to any communication from the Plaintiff or her counsel." (ECF No. 12 at 16). GEICO further argues that it attempted to reach a fair settlement with plaintiff in its offer dated November 8, 2018, which would have paid all of plaintiff's past medical bills and an additional sum for general damages. (ECF No. 12 at 17). GEICO notes that it sent its next settlement offer ten days after the EUO, which included approximately two-thirds of plaintiff's past medical bills based on the IME report, one round of future pain management injections, and a reasonable sum for general damages. (ECF No. 12 at 18).

In her response, plaintiff argues that GEICO failed to acknowledge and consider updated past medical records provided and documents establishing her need for continuing medical treatment. (ECF No. 15 at 9). Plaintiff contends that GEICO's liability under the UIM policy was reasonably clear when plaintiff demanded UIM coverage on October 23, 2018. (ECF No. 15 at 11). Plaintiff asserts that her past medical bills and future treatment costs were between $57,072.28 and $65,072.28 and plaintiff demanded the $100,000 policy limits under the UIM policy. (ECF No. 11–12). Plaintiff further argues that GEICO never provided plaintiff with a reasonable explanation of why it was unwilling to tender a fair and equitable settlement offer. (ECF No. 15 at 11). Thus, by plaintiff's estimation, a genuine issues exists because as a reasonable jury could find that GEICO failed to reasonably acknowledge and act on plaintiff's communications and that GEICO's liability for the full amount of the policy was reasonably clear. (ECF No. 15 at 10–11). The court disagrees.

GEICO has presented competent evidence showing that it promptly responded to plaintiff's requests and communications, that it had a basis for disputing plaintiff's demands for the full policy limit, and that it provided a reasonable explanation of the basis therefor.

In response to plaintiff's initial demand for the full policy limit on October 23, 2018, GEICO sent two letters, dated October 26, and 29, 2018, requesting completion of the statement of claim form and the medical report from plaintiff's doctor. (ECF Nos. 12-9, 12-10, 12-11). After no response from plaintiff, on November 8, 2018, GEICO sent its first settlement offer, noting the $15,000.00 in underlying carrier coverage, the $33,862.24 in medical bills included, adding an additional $7,500.00 for general compensation, and offering settlement in the amount of $26,362.24 as full and final settlement of the matter. (ECF No. 12-12).

Subsequently, on November 9, 2018, plaintiff sent another demand for the full policy amount, adding additional future medical costs between $20,025.00 and $28,025.00. (ECF No. 12-13). In response, on November 13, 2018, GEICO requested that plaintiff submit to an EUO regarding her past injuries and incidents, which plaintiff initially refused (*see* ECF No. 12-17), and provide the last five years of her medical records (ECF No. 12-14). Thereafter, GEICO and plaintiff exchanged a series of correspondences, wherein plaintiff demanded an explanation as to

GEICO's refusal to tender the full policy limit and GEICO requested an IMO and EUO. (ECF No. 12-15–12-21). Eventually, plaintiff submitted to an EUO on February 25, 2019, and an IMO was completed on February 7, 2019, followed by the IMO report on March 5, 2019. (ECF Nos. 12-22–12-24).

GEICO's second settlement offer, on March 7, 2018, determined the full value evaluation of plaintiff's claim to be $63,323.58. (ECF No. 12-25). Based on the information provided, this sum included $27,798.58 of plaintiff's $37,047.28 in medical bills, $28,025.00 in loss of earnings, and an additional $7,501.42 for general compensation. *Id.* Less the $15,000 of underlying carrier coverage, GEICO's final settlement offer was for $48,325.00. (ECF No. 12-25). On March 12, 2018, GEICO revised its settlement offer to $49,500.00. (ECF No. 12-26). In response, plaintiff filed the instant action. (ECF No. 1).

"[O]rdinarily whether the insurer has acted unreasonably, and hence in bad faith, in rejecting a settlement offer is a question of fact to be determined by the jury." *McDaniel v. Gov't Employees Ins. Co.*, 681 F. App'x 614, 616 (9th Cir. 2017) (citation omitted). "But the reasonableness of an insurer's conduct 'becomes [a question] of law only when, because there are no conflicting inferences, reasonable minds could not differ.'" *Id.* (citation omitted). Here, plaintiff does not present any evidence that GEICO acted in the manner specified by any of the statutory subsections above.

Plaintiff does not provide any support for her contention that GEICO's communications, settlement offers, or actions were delayed. To the contrary, based on the record, it appears that it was plaintiff who delayed by failing to respond to GEICO's request for supporting medical documentation and authorizations and initially refusing to submit to the examinations authorized under the policy. *See, e.g.*, *Williams v. Am. Family Mut. Ins. Co.*, 593 F. App'x 610, 612 (9th Cir. 2014) (affirming summary judgment for insurer on unfair claims practices claim because the insurer's delay was mostly attributable to it not having received documents it had requested). Notwithstanding, delay alone, without more, is insufficient to support plaintiff's UIPA claim. *See, e.g.*, *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1238 (D. Nev.

2010) (finding several-month delay did not state a claim under Nevada's unfair claims practices statutes).

Further, plaintiff fails to produce any competent evidence to support her allegations that GEICO failed to provide a reasonable explanation of the basis for the settlement offers or why the explanations provided in the settlement offers—for instance, those dated November 8, 2018, and March 7, 2019—were inadequate or unreasonable. (*See* ECF Nos. 12-12, 12-25). Nor does plaintiff explain her allegation that GEICO's settlement offers or GEICO's refusal to settle for the full policy limit were unreasonable.

Based on the foregoing, plaintiff has failed to carry her burden to provide evidence showing a genuine dispute of material fact for this cause of action. *See Celotex Corp.*, 477 U.S. at 325 (finding that "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case"); *accord Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 798 (Nev. 2009) ("General allegations supported with conclusory statements fail to create issues of fact."). Accordingly, the court will grant summary judgment as to plaintiff's UIPA claim.

**B. Claims (3) & (4) – Contractual & Tortious Breach of the Implied Covenant of Good Faith & Fair Dealing**

As to claim (3), plaintiff alleges that GEICO breached the implied covenant of good faith and fair dealing by failing "to properly present any fair or equitable offers to Plaintiff for compensation of damages for which she was rightfully entitled, which was unfaithful to the terms of the contract." (ECF No. 6 at 7).

With respect to claim (4), plaintiff argues that the breach of fiduciary duty claim was mistitled and that the claim was actually a claim for tortious breach of the implied covenant of good faith and fair dealing. (ECF No. 15 at 15). Plaintiff asserts that the claim alleges that GEICO in bad faith failed to reasonably, properly, fairly, and timely evaluate and tender the benefits due under the UIM policy and that GEICO undervalued her claims and withheld the full extent of her entitled benefits under the UIM policy. (ECF No. 15 at 15). Accordingly, the court construes claim (4) as a claim for tortious breach of the implied covenant of good faith and fair

dealing. *See, e.g.*, *Bourdel v. Wells Fargo Advisors, LLC*, No. 2:12-CV-01213-MMD, 2013 WL 1855745, at *2 (D. Nev. Apr. 30, 2013) ("A complaint must contain either direct or inferential allegations concerning 'all the material elements necessary to sustain recovery under some viable legal theory.'" (citation omitted)); *accord NC-DSH, Inc. v. Garner*, 218 P.3d 853, 857 (Nev. 2009) ("'A party is not bound by the label he puts on his papers.'" (citation omitted)).

In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989). This implied covenant requires that parties "act in a manner that is faithful to the purpose of the contract and the justified expectations of the other party." *Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract . . . damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991). A breach of the duty of good faith and fair dealing can occur "[w]here the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract." *Id.* at 922–23.

To prevail on a theory of breach of the covenant of good faith and fair dealing, a plaintiff must establish each of the following: (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995). An insurer breaches its duty to act in good faith when it unreasonably refuses "to compensate the insured for a loss covered by the policy." *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993) (internal citation and quotation marks omitted).

To establish a prima facie case of insurance bad faith in Nevada, an insured must show that (1) the insurer had no reasonable basis for disputing coverage and (2) that the insurer knew or recklessly disregarded the fact that there was no reasonable basis to dispute coverage. *See Powers v. United Serv. Auto Ass'n*, 962 P.2d 596, 604 (Nev. 1998). Even if a claim is wholly (or partially) denied, a bad-faith claim is subject to summary judgment "if the defendant

James C. Mahan
U.S. District Judge

- 10 -

demonstrates that there was a genuine dispute as to coverage," *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003), because "if the insurer had a reasonable basis to deny coverage, there can be no finding of bad faith," *Sherwin v. Infinity Auto Ins. Co.*, 2013 WL 5918312, *3 (D. Nev. Oct. 31, 2013) (internal citation omitted).

"Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). "An insurer does not act in bad faith merely because it disagrees with the claimant's estimation of his injuries or delays paying out benefits until it receives relevant documents or expert opinions." *Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1053 (D. Nev. 2017).

In the instant motion, GEICO argues that plaintiff's FAC ignores the fact that it offered to pay all of her past medical bills and $7,500.00 for general damages on November 8, 2018, and that it offered to pay all of plaintiff's past medical bills permitted by Dr. Rosen in the IME report on March 7, 2019. (ECF No. 12 at 19).

In her response, plaintiff argues that GEICO deliberately contravened the spirit and intention of its contract by its dilatory tactics, such as requesting more information and tending unreasonably low offers. (ECF No. 15 at 13). In support, plaintiff merely asserts that she provided medical and billing records in support of her request for the tendering of the full policy limits and even participated in both an IME and EUO. (ECF No. 15 at 13). The court finds plaintiff's arguments unavailing and either unsupported by citation to admissible evidence or contrary to the record.

GEICO has presented competent evidence showing that it had a reasonable basis for disputing plaintiff's claims for the full policy limit of $100,000.00. In her October 23, 2018 letter, plaintiff demanded the full $100,000.00 policy limit, but only provided and listed medical bills totaling $33,862.24. (ECF No. 12-9). GEICO's first settlement offer, dated November 8, 2018, was for $26,362.24, which factored in a $15,000.00 off set for the settlement plaintiff received from the negligent driver's insurance carrier and relied upon plaintiff's medical bills provided. (ECF No. 12-12).

Plaintiff's second demand, dated November 9, 2018, again sought the full $100,000.00 policy limit, but listed additional costs of future medical treatment between $20,025.00 and $28,025.00. (ECF No. 12-13). GEICO's second settlement offer, dated March 7, 2018, offered settlement in the amount of $48,325.00 after factoring in the $15,000.00 off set and relying on plaintiff's medical bills, loss of earnings, future medical treatments, and the IME report. (ECF No. 12-25).

In response, plaintiff has failed to carry her burden of providing competent evidence showing either GEICO had no reasonable basis to dispute the amount of her claim or that it knew or recklessly disregarded the fact that there was no reasonable basis for doing so. Rather, plaintiff merely alleges that GEICO failed to offer reasonable settlement amounts and/or unreasonably denied her demands for the full policy limit, which, without more, is insufficient to withstand summary judgment. *See, e.g.*, *Forouzan, Inc. v. Bank of George*, No. 56337, 2012 WL 642548, at *6 (Nev. Feb.27, 2012) (finding that "general allegations do not create a genuine issue of material fact as to whether [defendant] breached the covenant of good faith and fair dealing); *Ruggieri v. Hartford Ins. Co. of the Midwest*, No. 2:13–cv–0071, 2013 WL 2896967, at *4 (D. Nev. June 12, 2013) (holding in an insurance case that "[p]laintiff's mere allegation that [d]efendant denied coverage is insufficient to state a claim for the tortious breach of the implied covenant of good faith and fair dealing").

Plaintiff concedes that her past medical bills and future treatment costs were between $57,072.28 and $65,072.28, but, without more, merely posits that she was entitled to the full policy limit of $100,000.00 and that GEICO's dispute of the full policy limit was in bad faith or unreasonable. (ECF No. 15 at 12). This is insufficient. *Cf. Powers*, 962 P.2d at 604 (finding a triable issue as to bad faith because there was "abundant evidence" that the insurer's "investigation was improper, incomplete, poorly done, [and] in violation of [its] own procedures").

Further, plaintiff provides no support for her contention that GEICO's request for additional information was unreasonable or for improper purposes, such as undue delay. *See Amini v. CSAA Gen. Ins. Co*., No. 2:15-CV-0402-JAD-GWF, 2016 WL 6573949, at *4 (D. Nev.

Nov. 4, 2016) (granting summary judgment to insurer on bad-faith claim even though it delayed in making settlement offers and relied on only to expert opinions to reject the plaintiff's offer). In fact, based on the record, it appears that the delays, if any, were caused by plaintiff's failure to provide the authorization and wage information requested in May 2017 and her subsequent submission of future medical expenses in support of second demand in October 2018. (*See* ECF Nos. 12-7, 12-9).

Accordingly, the court will grant GEICO motion for summary judgment with respect to claims (3) and (4) of plaintiff's FAC.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that GEICO's motion for partial summary judgment (ECF No. 12) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that partial summary judgment is GRANTED in favor of GEICO and against plaintiff with respect to claims (1), (3), and (4) of plaintiff's FAC (ECF No. 6).

DATED March 30, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**